**David L. Dorrity, MHRD, CDS, CDT**
**Dorrity Safety Consulting, LLC, 2 Meeting Place, Greenville, SC 29615**
DLDorrity@aol.com – **(864) 288-7193**

# SAFETY REPORT

Prepared By:

DAVID L. DORRITY, MHRD, CDS, CDT

September 30, 2020

---

Prepared For:

HUGH MCANGUS, Esquire

---

Relating To The Following Matter:

MICHAEL J. PAULING and

RAMONA CESAREO-PAULING,

Plaintiff,

Vs.

IDELIVERTL, LLC, ISOM FREIGHT LINES, INC. and

SAMMIE LEE MCCLOUD, NAVISTAR, INC.,

NATIONAL FREIGHT MANAGEMENT, INC. And

G&P TRUCKING COMPANY, INC.,

Defendants.

---

Cause No.: 7:19-cv-00206-HMH

---

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

**David L. Dorrity, MHRD, CDS, CDT**
**Dorrity Safety Consulting, LLC, 2 Meeting Place, Greenville, SC 29615**
DLDorrity@aol.com – **(864) 288-7193**

# I.
# BACKGROUND and FOUNDATION

### A. Professional Qualifications and Expertise

1. I have worked in the transportation industry since 1969 in various capacities. I have a wide range of knowledge and experience in the various aspects of the transportation industry. I have owned, driven, loaded and inspected several types of commercial motor vehicles (hereinafter, CMVs) and have held a variety of positions with trucking companies. These positions ranged from clerk (at the outset of my career) to President of a 150-employee trucking company. Along that career path I have had oversight responsibility for various aspects of company operations including safety, operations, and more. Additionally, I have personally driven various, transportation, delivery, vehicles (including large CMVs), as well as hired, trained, and supervised hundreds of transportation drivers, including actual in-cab drivers.

2. In 1989, I began using my management and safety experience to start a consulting firm working for numerous and diverse types of non-DOT fleets, DOT commercial motor vehicle operations, and those using material handling equipment. I have provided consulting assistance in policy, procedures, audits and safety training development to over a hundred transportation fleets during my career. In 1993, I began aiding in investigating fleet accidents for our consulting clients and attorneys and have now reviewed over 800 fleet crash cases.

3. I have a master's degree in Human Resource Development with a concentration in safety training from Clemson University. My current professional Certifications, from the North American Transportation Management Institute (NATMI) and University of Central Florida, include:

- Certified Director of Safety (CDS)
- Certified Driver Trainer (CDT)

3. I was trained, evaluated and registered by the National Safety Council to teach their nationally recognized course – Defensive Driving Course for Professional Truck Drivers (DDC-PTD).

4. As a certified NATMI and National Safety Council (NSC) instructor, I have taught the following professional development courses:

- Managing Motor Fleet Safety
- Motor Fleet Safety Basics
- Advanced Motor Fleet Safety
- Defensive Driver Course for Professional Truck Drivers (NSC)
- Commercial Motor Vehicle Accident Investigation
- Commercial Driver Training (Train-the-Trainer)
- Federal Motor Carrier Safety Regulations (Co-taught with U.S.D.O.T.)

5. Additionally, I was an adjunct professor from 2005 to 2008 at Clemson University (Clemson, S.C.). At Clemson, I taught a required upper-level undergraduate course (CTE360) in industrial (OSHA) and commercial motor vehicle safety (FMCSR) compliance training.

6. Collectively, I have previously qualified and testified in over 300 cases (including both state and federal jurisdictions) as an expert witness, inclusive of the following technical fields of expertise:

- Transportation Fleet Safety
- Transportation Safety Compliance
- Commercial Driver Safety Training
- Commercial Driver Qualifications
- Fleet Driver Safety Training
- Federal Motor Carrier Safety Regulations
- Department of Transportation Regulations
- Traffic Collision Avoidance
- Defensive Driving Performance Failures and Training Standards
- Cellphone Distracted Driving Analysis, Effects, Policy and Supervision Methods
- Fleet Driver Hiring, Training and Supervision Principles and Practices
- Hours of Service Management & Fatigue Mitigation, Log Auditing/ Reconstruction
- Fleet Vehicle Collision and Accident Investigation
- Fleet Telematics Analysis
- Vehicle Inspection and Maintenance Procedures
- Materials Handling Accident Investigation

7. Additionally, during my career, I have attended, or taught, over 50 different subject matter courses in my fields of expertise involving various universities, organizations, corporations, and government agencies. For a complete list of my qualifications and professional experience for my field of expertise, please see my attached Curriculum Vitae (see **Exhibit A**) and Expert Case List (see **Exhibit B**), attached hereto and fully incorporated herein by reference.

8. I am charging $300 per hour for my general consulting services, $400 per hour for trial and deposition appearances (5-hour minimum).

### B. Objective

9.  This Report's objective is to provide <u>expert opinions</u>, based upon my technical and/or specialized knowledge, skill, education, training, and experience regarding the subject traffic collision, **that may assist a trier of fact** in this case as follows:

- Identification of applicable industry standards or caution and care regarding Defendant's conduct, before and during the traffic collision in question.

- Application of relevant federal, state, local, and industry standards, norms, and best practices of caution and care to evaluate and assess Defendant's conduct prior to and during the traffic collision in question.

- Whether or not the Defendant violated any applicable standards of caution and care prior to and during the traffic collision in question?

- Whether or not, prior to and during the traffic collision in question, Defendant violated any standards of caution and care as established and applicable by state commercial vehicle driving standards, laws, rules, codes, or regulations, industry standards, norms, or best practices?

- Whether Defendant's actions/conduct, during the traffic collision in question, was/were negligent or grossly negligent (or failed to act as a reasonably prudent [smart] commercial driver by not abiding by the applicable laws, rules, codes, regulations, industry standards, norms, or best practices)?

- Whether Defendant's negligent actions/conduct (or failure to act as a reasonably prudent commercial driver during the traffic collision in question) caused (or was a substantial factor in creating) the traffic collision in question?

- Identify how and/or why Defendant's actions/conduct, during the traffic collision in question, was/were negligent.

- Whether Defendant could have prevented the traffic collision in question by following the standards of caution and care established by any applicable laws, rules, regulations, industry standards, norms, or best practices for fleet safety and/or commercial drivers.

4

**David L. Dorrity, MHRD, CDS, CDT**
**Dorrity Safety Consulting, LLC, 2 Meeting Place, Greenville, SC 29615**
DLDorrity@aol.com – (864) 288-7193

### C. Documentation and Information Reviewed

10. I have, in this case, reviewed the following documentation and information:
    Case Material Reviewed
    - Crash Report;
    - Pleadings;
    - Defendant's Interrogatory and Discovery Answers;
    - Defendant's Document Response;
    - Deposition and Exhibits of:
        - Michael Pauling,
        - Sammie McCloud,
        - Antoinette Godfrey,
        - Gillian Isom,
        - Terese Jones (Navistar).
    Industry Standards of Caution and Care Reviewed

    - Federal Motor Carrier Safety Regulations ("FMCSR") – (CFR 49);
    - A Motor Carrier's Guide to Improving Safety (FMCSA, 2009, et al.)
    - "Motor Fleet Safety Supervision Principles and Practices" by NATMI;
    - "Safe Practices for Motor Vehicle Operations" ANSI/ASSE Z15-1, 2012 and 2017;
    - Other industry texts, training or research as may be noted within the report.

### D. Basis of Opinions

11. The basis of my opinions, stated herein, include the aforementioned documentation and information reviewed and my knowledge, skill, education, training, and experience; relevant industry regulations and standards (referenced in this report). Additionally, the analysis and opinions (stated herein) are objectively based upon the commercial fleet safety and transportation industry best practices for safety principles, laws, rules, codes, regulations, restrictions, requirements, industry standards, and techniques that are generally accepted as valid by the U.S. Department of Transportation, Federal Motor Carrier Safety Administration (and their state DOT partners), National Highway Transportation Safety Administration, Occupational Safety and Health Administration, American Association of Motor Vehicle Administrators, National Safety Council, North American Transportation Management Institute, American National Standards Institute, Commercial Vehicle Safety Alliance and the commercial driving and fleet safety community.

12. The primary purpose and use of these commercial driving and fleet safety principles, laws, rules, best practices, etc., is for motor carriers, state and federal government regulatory agencies to prevent traffic collisions and ensure the health, welfare, and safety of commercial drivers, as well as all other drivers and passengers on the roads in the United States of America.

### E. Limitations of Opinions

13. Any and all opinions stated herein, are specifically made only within the scope of my expertise. Also, my stated opinions all rely upon the application of the data/information, stated above, to valid principles and generally accepted best practices within the field of commercial fleet and driver safety within the United States of America.

14. There are multiple motor carriers and commercial drivers involved in the subject crash. I was tasked with evaluating solely the regulatory and safety compliance associated with the commercial motor vehicle that was operated by Sammie Lee McCloud. The following observations, opinions, and conclusions are limited to that task.

## II.
## OPINIONS and DISCUSSION

15. Throughout this Report, unless otherwise noted, I am referring to the relevant minimum industry standards of caution and care in place on the date of the traffic collision in question. All my observations and opinions are based on industry standards that are used and relied upon by all experts in my field and my opinions should be consistent with any reasonable safety expert who has similar training and experience. The standards, concepts, methods and techniques in evaluating and reaching my opinions in this case are the same that I have used over the last 25 years for my non-litigation trucking industry clients. I am available for deposition to more fully explain any of my observations and opinions.

16. Mr. McCloud was driving the commercial motor vehicle (CMV) operated by defendant IDeliverTL, LLC. At the time of the subject crash, IDeliverTL was registered before the FMCSA as an interstate motor carrier (USDOT # 2870045). IDeliverTL stated on an MCS-150 form (01/16/2018) that they operated as a For-hire carrier in interstate commerce. IDeliverTL was granted FMCSA common carrier operating authority on 05/02/2017 (MC# 00962181).

**David L. Dorrity, MHRD, CDS, CDT**
**Dorrity Safety Consulting, LLC, 2 Meeting Place, Greenville, SC 29615**
DLDorrity@aol.com – (864) 288-7193

17. IDeliverTL signed at least 2 documents (MCS-150)[1] and (OP-1)[2] where each require acknowledgement that the signer/company is familiar with the Federal Motor Carrier Safety Regulations (FMCSR) that will become a major focus of this report.

18. Ms. Godfrey, owner and director of IDeliverTL, testified that at the time of the subject crash they utilized freight brokers for obtaining shipments. Ms. Godfrey also testified that she frequently utilized owner/operators who owned their own trucks and drivers who were paid by those owner/operators.

19. Mr. Isom was the owner of the CMV operated by Mr. McCloud. Mr. Isom testified that the shipment transported at the time of the crash was procured through G&P Trucking.

20. Any driver of a CMV operated by IDeliverTL is considered their regulatory employee – regardless of how, or from whom, the driver receives compensation.[3]

21. IDeliverTL had a duty to adequately qualify Mr. McCloud before allowing him to drive a CMV that was under their control. The Federal Motor Carrier Safety Regulations (FMCSR)[4] provides the minimum standards for CMV driver qualifications.

> *§391.1 Scope of the rules in this part; additional qualifications; duties of carrier-drivers. (a) The rules in this part establish minimum qualifications for persons who drive commercial motor vehicles as, for, or on behalf of motor carriers. The rules in this part also establish minimum duties of motor carriers with respect to the qualifications of their drivers.*

22. IDeliverTL deviated from the minimum duties to qualify Mr. McCloud before allowing him to drive. The following is a partial list of qualification items that IDeliverTL failed to comply with:

      a. CMV Driver Application Form (§ 391.21),

      b. State investigation of driver license safety history (§ 391.23),

---

[1] Bi-annual Motor Carrier Identification Report.
[2] Motor Carrier For-Hire Operating Authority.
[3] FMCSR 49 CFR. Employee Definition (§ 390.5) – "Employee means any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle),"
[4] 49 CFR.

    c. Documented background investigations of driving and employment safety history (§ 391.23),

    d. Documented investigation of previous employment participation in a drug and alcohol testing program (§ 391.23),

    e. Driver's Certification of Violations (§ 391.27),

    f. Valid USDOT medical certification (§ 391.41),

    g. Road Test in the CMV to be operated (§ 391.31),

    h. Pre-employment negative drug test (§ 382.301).

23. In addition to the above qualification process, and if qualified, IDeliverTL was required to provide instruction (i.e., training) regarding other regulatory compliance.[5] For example, IDeliverTL should have provided training and performance evaluation of Mr. McCloud regarding CMV vehicle inspections.[6] This type of inspection training would help Mr. McCloud to identify mechanical defects that could result in a breakdown or accident. There is no evidence that IDeliverTL provided any instruction, training or evaluation of Mr. McCloud's safety compliance or performance.

24. Inadequate inspection, maintenance and repair are also contributing factors to the breakdown in the highway. Mr. McCloud should have inspected and detected the defective air valve blamed for his breakdown. Mr. McCloud had a duty to inspect and report to management any defects regarding his truck/trailer braking system [§ 396.11(a)(1)(i)]. A careful and thorough driver inspection of the CMV braking system includes air valves (including the subject trailer pop-off valve), couplings, hoses, slack adjustment mechanism, brake drums and pads. Any loose, or missing, parts should be replaced before operating so as to not cause a hazard of breakdown on the highway (§ 396.7)[7].

---

[5] § 390.3 General Applicability.
(e) Knowledge of and compliance with the regulations. (1) Every employer shall be knowledgeable of and comply with all regulations contained in this subchapter that are applicable to that motor carrier's operations.
(2) Every driver and employee involved in motor carrier operations shall be instructed regarding, and shall comply with, all applicable regulations contained in this subchapter.
[6] § 396.11, 396.13.
[7] §396.7 Unsafe operations forbidden.
(a) General. A motor vehicle shall not be operated in such a condition as to likely cause an accident or a breakdown of the vehicle.

25. IDeliverTL had a duty to maintain and repair all defective CMVs (§ 396.3) operated under their supervision. Part of this duty required systematic inspection and routine maintenance of the subject CMVs.

26. The industry standard for a CMV driver is to find the nearest and closest safe location to pull completely off the roadway when an unforeseen mechanical failure occurs. If a CMV becomes disabled on the roadway, the CMV driver is required to activate emergency flashing lights until emergency warning triangles are installed. These triangles must be installed "as soon as possible", but in any event within 10 minutes.[8] These safety measures are designed to provide other motorists an alert to the hazard and prevent crashes.

27. In summary, IDeliverTL failed to have a management system that adequately qualified drivers and provided training and supervision commensurate with the industry standards and regulations. Ms. Godfrey was an absentee owner who had no prior trucking experience and testified she started IDeliverTL because it appeared to be a lucrative business. Based on my experience, a motor carrier cannot be safe, and even financially successful, if the management is not experienced, trained, and involved in the daily operation.

28. In conclusion:
   a. Mr. McCloud was not qualified to drive a CMV for IDeliverTL according to the FMCSR,
   b. IDeliverTL failed to instruct, or affirm knowledge, Mr. McCloud regarding critical safety regulations,
   c. IDeliverTL failed to have an adequate management system that complied with the FMCSRs and motor carrier supervision standards.

### III. CERTIFICATION

The observations, discussions and conclusions/opinions in this report are based on my education, training, knowledge, skills, and experience after reviewing the specified evidence. I hold these professional opinions to a reasonable degree of certainty in the fields of shipping and

---

[8] § 392.22.

motor fleet safety standards and regulatory compliance. These opinions are based solely on the facts, research, minimum trucking industry standards, trucking regulations and requirements as interpreted by the industry. I used the same analytical approach as used in my non-litigation work and work within the trucking industry. The process I used to reach my observations, opinions and conclusions is the same that any other reasonable expert in my field would use, given the same background, experience and facts. I reserve the right to supplement these opinions as necessary should I be asked to review additional evidence. I plan to use anything mentioned in this report, the references and/or the discovery in this case as a trial exhibit.

**Signed:** *David L. Dorrity*

**David L. Dorrity, MHRD, CDS, CDT**

**Certified Transportation Safety Director**